[S. F. No. 10849. In Bank.—October 30, 1925.]

NANCY E. LEE, Respondent, v. JACK M. SILVA et al., Defendants; R. D. BEALS et al., Appellants.

[1] JURISDICTION—ACTIONS IN REM—NATURE OF PROCEEDING—NOTICE—PARTIES—JUDGMENT.—Strictly speaking, an action *in rem* proceeds only against property seized and sought to be held for the satisfaction of an asserted charge against property without regard to the title of individual claimants to the property, and jurisdiction to thus deal with the property is acquired, in the first instance, by the seizure of the property and of the subsequent proceedings for the satisfaction of the asserted claim against the property by a general notice to all the world of the fact of seizure and the pendency of the action, which notice suffices to make the claimants of the property parties to the action with the result that the judg-

---

1. See 1 Cal. Jur. 323; 1 R. C. L. 328.

ment, when rendered, will comprehend all persons and conclude as well the status of the property upon which the judgment operates.

[2] ID.—PROCEEDINGS QUASI IN REM.—Proceedings in law which, while substantially proceedings *in rem,* to the extent that they seek to subject particular property to the satisfaction of an asserted claim, nevertheless assume some of the characteristics of an action *in personam,* are properly classed as actions *quasi in rem.*

[3] ID.—FORECLOSURE OF STREET ASSESSMENT LIEN—ACTION QUASI IN REM—PARTIES.—A foreclosure proceeding under section 27 of Street Improvement Act of 1911 (Stats. 1911, p. 746), while subjecting the property to the satisfaction of a street assessment lien, is a mixed one, because it also carries the characteristics of an action *in personam,* to the extent that the owner of the property is required to be made a party to the end that he may appear and protect his interest in the property, and, therefore, such action falls within the category of actions *qausi in rem.*

[4] ID.—ABSENCE OF PERSONAL LIABILITY—PARTIES—JUDGMENT.—The change in the street improvement statutes so as to do away with the personal liability of the owner for the assessment did not transform the action to foreclose a street assessment lien from one *quasi in rem* to one strictly *in rem;* nor did such change in the statutes operate to permit the judgment in the action to function as a foreclosure of the rights of persons not joined or appearing as defendants in the action who may have had an interest in the property subjected to the lien.

[5] ID.—LIS PENDENS—SUBSEQUENTLY ACQUIRED INTEREST.—The purpose of a *lis pendens* is merely to furnish means of notifying all persons of the pendency of an action and thereby to bind any person who may acquire an interest in property, subsequent to the institution of the action, by any judgment which may be secured in the action affecting the property.

[6] ID.—ACTION AFFECTING LAND—PARTIES—PURCHASER UNDER EXECUTORY CONTRACT—SUBSEQUENTLY ACQUIRED TITLE—LIS PENDENS. A person having acquired a contractual interest in land, under a contract duly recorded, even though the contract be executory in its nature, prior to the institution of an action affecting the land, must be made a party to the action, and if not so made a party will retain the right to clothe his equity with the legal title as if no action had been instituted, and this is so even though such person does not complete the payment of the purchase price of the land nor receive a conveyance of the legal title thereto until after the institution and during the pendency of the action—such purchaser

---

5.   See 16 Cal. Jur. 644; 17 R. C. L. 1009.

6.   See 16 Cal. Jur. 660.

being a prior purchaser, whose rights therein are not subjected to a subsequent *lis pendens.*

[7] Id.—Action to Foreclose Lien on Trust Property—Parties—Joinder of Beneficiary.—Conceding that the vendor and the vendee under an executory contract for the sale of real property occupy the relation of trustee and *cestui que trust,* in an action by a stranger to said trust to foreclose a street assessment lien upon the property, as distinguished from an action instituted in opposition to the trust for the purpose of declaring the trust a nullity, both the trustee and the *cestui que trust* are necessary parties defendant, where the interest of the *cestui que trust* is known to the plaintiff at the time of instituting the action.

[8] Id.—Nonjoinder of Necessary Party—Judgment—Status of Successor in Interest.—Where a party in interest of record is not made a party to a proceeding to foreclose a street assessment lien, the judgment in such proceeding is not binding upon him; and his successor in interest, standing in his shoes, cannot be bound by the said judgment.

---

(1) 34 **C. J.,** p. 1172, n. 13.    (2) 1 **C. J.,** p. 930, n. 9.    (3) 28 **Cyc.,** p. 1224, n. 57.    (4) 28 **Cyc.,** p. 1232, n. 7.    (5) 38 **C. J.,** p. 12, n. 71. (6) 38 **C. J.,** p. 58, n. 18, 19.    (7) 29 **Cyc.,** p. 453, n. 4.    (8) 34 **C. J.,** p. 900, n. 78.

APPEAL from a judgment of the Superior Court of Alameda County. Dudley Kinsell, Judge. Affirmed.

The facts are stated in the opinion of the court.

Johnson & Shaw for Appellant.

Pierre A. Fontaine for Respondent.

LENNON, J.—This action was instituted by the plaintiff to quiet her title to a certain lot of land, situate in the city of Oakland, of which she claimed to be the owner in fee and which the appealing defendants claim under a sheriff's deed, made pursuant to a judgment foreclosing a lien of a street assessment levied upon the property. Appellants, answering the plaintiff's complaint, denied plaintiff's ownership and affirmatively alleged that defendants Jack M. Silva and Ellen J. Silva, his wife, were the

---

7. See 25 Cal. Jur. 684; 27 R. C. L. 539.
8. See 15 Cal. Jur. 181.

owners of the land and that defendants R. D. Beals and Anson S. Bilger were the owners and holders of a deed of trust covering said land which secured the payment of certain indebtedness of said Silva and his wife to defendant, Oakland Paving Company. The facts of the case are conceded to be these:

On August 11, 1908, while the legal title to the land in controversy was vested in Mrs. M. A. Cornelius, she entered into a conditional contract of sale and purchase with G. H. and C. F. Lee whereby she agreed to convey to them the land in suit for a specified purchase price, which was to be paid in stipulated monthly installments. This contract was recorded on November 20, 1911. Subsequent thereto, on May 1, 1912, proceedings were duly instituted under the Improvement Act of 1911 (Stats. 1911, p. 730) for the improvement of the street fronting on the land in suit. The said land was assessed in the sum of $21.52 for the making of said improvements. On October 3, 1914, Mrs. M. A. Cornelius died, testate, and one A. W. Cornelius was duly appointed executor of her last will and testament. Subsequently, on April 15, 1915, the Oakland Paving Company commenced an action to foreclose its lien for said street assessment but did not join either G. H. or C. F. Lee therein, nor did they appear in the action. At the time said foreclosure action was commenced, notice of the pendency thereof was duly recorded. Thereafter C. F. Lee assigned all his interest in the contract for the sale of said land to said G. H. Lee and this contract was duly reported October 21, 1915. A. W. Cornelius, as executor, on July 1, 1916, conveyed said land to said G. H. Lee by a deed executed and delivered by virtue of and pursuant to the terms of the pre-existing conditional contract of sale. This deed was recorded July 3, 1916. In March, 1917, said G. H. Lee conveyed to the plaintiff herein, Nancy E. Lee, said land. Subsequent to this conveyance, but before the recordation thereof, judgment was entered in the foreclosure suit in favor of the Paving Company and against the defendants named in that action. Pursuant to said judgment the sheriff conveyed said land to the Paving Company by deed dated August 29, 1919. Thereafter the Paving Company conveyed the land to the Silvas, who executed their deed of trust, covering the prop-

erty in suit, as security for their promissory note to said company for a loan of $2,000, which debt remains unpaid. The Paving Company and the trustees under this deed of trust, R. D. Beals and Anson S. Bilger, are the appellants herein.

Upon the foregoing facts the trial court entered judgment in favor of the plaintiff, quieting her title to the land against all of the defendants to the action.

In support of the appeal the principal point urged by the appellants is that the action foreclosing the assessment lien was a proceeding *in rem* and that since the provisions of the Improvement Act of 1911, sections 27 and 79 (Stats. 1911, pp. 746 and 766), require only the legal owner to be made a party to the foreclosure action, the rights and interests of all other persons in the property were necessarily adjudicated and concluded by the judgment in that proceeding and that, therefore, the plaintiff's predecessor in interest, G. H. Lee, even though he was not joined in the action and did not appear therein, was bound by the judgment and that the plaintiff is in no better position than he is. Respondent, on the other hand, in support of the judgment contends that the action to foreclose the street assessment lien was not strictly a proceeding *in rem* and that, therefore, her predecessor in interest was, in order to be bound by the judgment, a necessary party to the foreclosure action, which gave birth to the sheriff's deed, under which appellants claim title to the lot in suit, and not having been made a party to the action and not appearing therein was not bound by the judgment.

[1] The latter contention, we think, must be sustained. It has been the rule of law in this state, firmly fixed by a series of decisions, that a proceeding to foreclose a street assessment lien is not strictly a proceeding *in rem*. Strictly speaking, an action *in rem* proceeds only against property seized and sought to be held for the satisfaction of an asserted charge against property without regard to the title of individual claimants to the property. Jurisdiction to thus deal with the property is acquired, in the first instance, by the seizure of the property and of the subsequent proceedings for the satisfaction of the asserted claim against the property by a general notice to all the world of the fact of seizure and the pendency

of the action which notice suffices to make the claimants
to the property parties to the action with the result that
the judgment, when rendered, will comprehend all per-
sons and conclude as well the status of the property upon
which the judgment operates. (*Bartero* v. *Real Estate
Savings Bank,* 10 Mo. App. 76; *Freeman* v. *Alderson,* 119
U. S. 185 [30 L. Ed. 372, 7 Sup. Ct. Rep. 165, see, also,
Rose's U. S. Notes]; *Woodruff* v. *Taylor,* 20 Vt. 19;
Waple's Proceedings in Rem., p. 328.) [2] There are,
however, proceedings in law, which, while substantially pro-
ceedings *in rem,* to the extent that they seek to subject
particular property to the satisfaction of an asserted claim,
nevertheless, assume some of the characteristics of an ac-
tion *in personam* and are, therefore, properly classed as
actions *quasi in rem* (*Freeman* v. *Alderson, supra; Galpin*
v. *Page,* Fed. Cas. No. 5206 [3 Sawy. 93, 124]; *Gassert*
v. *Strong,* 38 Mont. 18 [98 Pac. 497]; *Kelso* v. *Black-
burn,* 3 Leigh (Va.), 299). [3] A perusal of the statute,
pursuant to the provisions of which the foreclosure suit
in controversy in the present action was instituted (Stats.
1911, p. 746, sec. 27), indicates, we think, that such ac-
tion falls within the category of actions *quasi in rem.*
Clearly by the very terms of the statute immediately under
consideration the action, while subjecting the property to
the satisfaction of a street assessment lien, is a mixed
one because it also carries the characteristics of an action
*in personam,* to the extent that the owner of the property
is required to be made a party to the end that he may
appear and protect his interest in the property (5 Mc-
Quillin on Municipal Corporations, p. 4535, sec. 2131;
*Wood* v. *Brady,* 68 Cal. 78 [5 Pac. 623, 8 Pac. 599];
*Wood* v. *Curran,* 99 Cal. 137 [33 Pac. 774]; *Page* v. *W. W.
Chase Co.,* 145 Cal. 578 [79 Pac. 278]; *Taylor* v. *Palmer,*
31 Cal. 241; *Holt Mfg. Co.* v. *Collins,* 154 Cal. 265 [97 Pac.
516]; 1 Cor. Jur. 929).

[4] It may, perhaps, be conceded that one of the
earlier statutes of this state (Stats. 1862, p. 391, sec. 17),
covering and controlling street assessment liens, required
the foreclosure action to be instituted against the owner
of the property and made him personally liable for the
assessment, and that the later statutes dealing with the
same subject matter do not provide for the personal lia-

197 Cal.—24

bility of the owner. It does not follow, however, that by
the change, if any, in the statutes, the action to foreclose
a street assessment lien was transformed from one *quasi
in rem* to a proceeding strictly *in rem*. Nor did such
change in the statute operate to permit the judgment in
the action to . function as a foreclosure of the rights of
persons not joined or appearing as defendants in the ac-
tion who may have had an interest in the property sub-
jected to the lien. The case of *Phelan* v. *Dunne,* 72 Cal.
229 [13 Pac. 662], does not, as appellants assert, so hold.
The only question decided in that case was to the effect
that only the heirs and devisees and not the personal repre-
sentatives of a deceased owner of property, subjected to
the lien of a street assessment, are necessary parties to the
foreclosure action. And the court expressly refrained
from deciding the question of whether or not persons,
other than the heirs or devisees of the deceased owner,
having an interest in the property were proper parties,
whose rights under the provisions of the Statute of 1872
(Stats. 1871–72, p. 816, sec. 13), declaring who may sue
and be sued, might be foreclosed of their interest in the
property without joining them as defendants in the ac-
tion. The act of 1911 (Stats. 1911, p. 746, sec. 27), under
which the foreclosure action in question here was insti-
tuted, provides, as did the act of 1872, that "the con-
tractor or his assignee may sue in his own name, the
owner of the land, lots, or portions of lots, assessed. . . . ,"
and section 79 of the act of 1911 (Stats. 1911, p. 766) de-
fines, as did the act of 1872, the "owner," for the pur-
poses of the act, to be "the person owning the fee, or the
person in whom, on the day the action is commenced, ap-
pears the legal title to the lot and lands by deeds duly
recorded. . . . " The act of 1911, in so far as concerns
its provisions relating to who may sue and be sued, and
the definition of owner therein, is but a composite reitera-
tion and re-enactment of the earlier improvement acts, and
this court in construing identical provisions found in the
act of 1872 held in *Wood* v. *Curran, supra,* upon the au-
thority of *Wood* v. *Brady, supra,* that the action therein
provided for the foreclosure of a street assessment lien was
"not strictly a proceeding *in rem.*" The precise phrase-
ology in the act of 1872 designating the persons who may

sue and be sued found its way into the Vrooman Act
(Stats. 1885, p. 157, sec. 12), and this court, necessarily
considering the purport of that provision, held, in effect,
in *Page* v. *W. W. Chase Co.*, 145 Cal. 578 [79 Pac. 278];
that the foreclosure of a street assessment lien was not
strictly a proceeding *in rem*. It would seem, therefore,
that an action to foreclose a street assessment lien, pur-
suant to the provisions of the statute of 1911, is to-day
just what it always has been held by this court to be, under
the earlier and similar statutes, an action *quasi in rem*,
and "not a proceeding wherein a judgment for the sale
of the property will bind the entire world, or affect the
interest therein of any owner except those who are made
parties defendant in the action. There can be no pro-
ceeding *in rem* except it be authorized by statute, and in
such a proceeding the *res*, which is to be affected thereby,
is the defendant, and must be brought before the court
either by seizure or by publication of notice. Unless notice
of the proceeding is in some form given to the owner of
the *res* and an opportunity afforded him to defend the
same, a judgment for its sale would have the effect to de-
prive him of his property without due process of law"
(*Page* v. *W. W. Chase Co., supra; Wood* v. *Curran, supra;
Wood* v. *Brady, supra*).

The rule thus enunciated was not abrogated by the later
cases of *Woodill, etc.,* v. *Young*, 180 Cal. 667 [5 A. L. R.
1296, 182 Pac. 422], and *Barber Asphalt Co.* v. *Armstrong*,
48 Cal. App. 70 [191 Pac. 954]. These two cases do not
refer to the earlier cases, which, either expressly or in ef-
fect, declare the foreclosure of a street assessment lien to
be a proceeding *quasi in rem*, and it cannot be correctly con-
cluded that the earlier cases were, even by implication,
overruled by anything decided or declared in the two last
cases referred to. The court was not called upon in the
Woodill case to determine whether or not the rights of
persons not made parties to the action, and not appearing
therein, were bound by the judgment. The only question
involved and decided in that case was that of the asserted
priority of two conflicting street assessment liens. The pre-
cise question decided was that the relative priority of
conflicting street assessment liens must be determined by
the reverse order of their creation, that is to say, the lien

last imposed in point of time is paramount to all such other like liens. In arriving at its conclusion the court declared, in effect, that street assessment liens were akin to those created by the imposition of general taxes to the extent that, in both instances, the taxing power operated not upon any specific interest in the land but upon the land itself, that is, the *res,* and therefore, aside from any express requirement of the statute to that effect, the tax last levied and imposed as a lien upon the property "is superior and paramount to the lien of all other taxes, claims or titles." The paramountcy of the lien last imposed is made so, apparently, to effectuate a public purpose of promoting public improvements, which might otherwise be impeded if not altogether thwarted by the delay ordinarily incidental to the satisfaction of prior liens. While the Woodill case does declare in terms that the foreclosure of a street assessment lien is a proceeding *in rem,* nevertheless that declaration when considered in connection with the only question decided by the court and in the light of the earlier decisions, which were not referred to, obviously, because a discussion of them was not necessary to a decision of the case then in hand, must be taken to mean no more than that inasmuch as the measure of satisfaction of the lien is limited to the value of the property involved in the suit, the proceeding is *quasi in rem,* or, as was said by Mr. Justice Harrison in *Page* v. *W. W. Chase Co., supra,* "an action for the foreclosure of the lien of a street assessment is not a proceeding *in rem* . . . except in the sense that the amount of the lien can be collected only out of the amount of the property involved in the action." So considered there is nothing in the Woodill case which in anywise conflicts with the rule enunciated in the earlier decisions; nor does the case of *Barber Asphalt Co.* v. *Armstrong, supra,* express a contrary view, for it is founded practically upon the authority of the Woodill case and its reasoning and result must be limited to the question there decided which was precisely the question presented in the Woodill case.

It is argued that the plaintiff's predecessor in interest was a purchaser *pendente lite* because the executor of the last will and testament of Mrs. Martha A. Cornelius did not execute a conveyance of the property in suit to him, in keeping with the consummation of contract of purchase and

sale, until long after the filing of the *lis pendens* in the action for the foreclosure of the street assessment lien; and that therefore plaintiff's predecessor in interest was bound by the judgment in the foreclosure action and the plaintiff standing in his shoes is likewise bound by that judgment. [5] The purpose of a *lis pendens* is merely to furnish a means of notifying all persons of the pendency of an action and thereby to bind any person who may acquire an interest in property, subsequent to the institution of the action, by any judgment which may be secured in the action affecting the property. [6] It is the rule generally that a person having acquired a contractual interest in land, even though the contract be executory in its nature, prior to the institution of an action affecting the land, must be made a party to the action and if not so made a party will retain the right to clothe his equity with the legal title as if no action had been instituted, and this is so even though such person does not complete the payment of the purchase price of the land nor receive a conveyance of the legal title thereto until after the institution and during the pendency of the action. The effect of this rule is that the purchaser under an executory contract of purchase and sale made before the institution of an action affecting the land is a prior purchaser, whose rights therein are not subjected to a subsequent *lis pendens*. (*Trimble* v. *Boothby,* 14 Ohio, 109 [45 Am. Dec. 526]; *Dodge* v. *Clark,* 268 Fed. 784; 25 Cyc. 1482; 17 Ruling Case Law, p. 1028.) The contract by which plaintiff's predecessor in interest purchased the property in suit from Martha E. Cornelius, the former owner, was entered and recorded in the recorder's office of the county of Alameda, where the foreclosure action was instituted, more than four years prior to the institution of that action and the filing of the *lis pendens* therein. Accordingly the whole world had notice that by the contract of purchase, plaintiff's predecessor in interest had acquired, conditionally, the property in suit.

[7] It is contended that at the time the action for the foreclosure of the street assessment lien was instituted there existed, by virtue of the conditional contract of purchase and sale, the relationship of trustee and *cestui que trust* between the holder of the legal title, who was made a party defendant in the action, and plaintiff's predecessor in inter-

est and that as a consequence the latter was bound by the judgment against the trustee, even though he was not joined and did not appear as a defendant in the action and had no notice of the pendency thereof save by the filing of the *lis pendens.* Conceding the existence, under the facts of the instant case, of the trust relationship contended for, nevertheless, the *cestui que trust,* or beneficiary, under the well-established rule in actions by or against the trustee or by a stranger to the trust affecting the subject matter of the trust, as distinguished from actions instituted in opposition to the trust for the purpose of declaring the trust a nullity, is a necessary party. (*Day* v. *Wetherby,* 29 Wis. 363; *Beckwith* v. *Laing,* 66 W. Va. 246 [66 S. E. 354]; 2 Perry on Trusts, p. 1430, sec. 873; 2 Beach on Trusts, pp. 1728–1730, secs. 754, 755; 1 Freeman on Judgments, p. 1075, sec. 500; Pomeroy's Code Remedies, 4th ed., p. 348, sec. 253.)

The cases and authorities cited by appellants in support of the proposition that a judgment against a trustee is binding upon the *cestui que trust* have no application to the facts of the instant case and deal only with the exception to the general rule, which has application to actions instituted to destroy the trust or to those cases where the trustee is empowered, either expressly or impliedly, to represent his beneficiaries in all things relating to their common interest in the trust property.

The case of *Archbishop* v. *Shipman,* 79 Cal. 288 [21 Pac. 830], so strongly relied upon to support appellants' contention in this behalf, was an action to enjoin the enforcement of a decree for the sale of certain real estate for the satisfaction of a street assessment. An injunction was sought upon the ground that plaintiff, in his capacity as a corporation sole, was the owner of the property at the time of the institution of the action for the foreclosure of the assessment lien, and not having been made a party, in his corporate capacity, in that action, the judgment therein, as against him, was void. The court expressly declared that the only question necessary to a decision of the case was whether or not the finding of the trial court that the plaintiff was the owner of the assessed property at the time of the institution of the action in foreclosure and the rendition of the judgment therein, was sustained by the evidence.

The conclusion ultimately reached was that the evidence was wholly insufficient to sustain the finding of corporate ownership and, incidentally, that no showing was made, in keeping with the allegations of the complaint, of any equitable ground "for restraining the enforcement of the judgment against the parties against whom it had been rendered" (*Page* v. *W. W. Chase Co., supra*), and for that reason the case was reversed. This conclusion was reached notwithstanding the conceded facts of the case that as a matter of record J. S. Alemany was the owner of the legal title to the property and that it appeared from the parol testimony in the case that he held the legal title as a trustee for the use and benefit of the Roman Catholic Church. The court declared "That these facts alone would not entitle the plaintiff to enjoin the sale, but it must show that it had, subsequent to the deed (which conveyed the property to said Alemany individually and not as Archbishop), become the owner of the legal title to the property, and that the appellants had notice of the facts at the time of the proceeding to enforce the street assessment." Thus it would seem that the court's discussion of the case which led up to the only question presented and decided in the case may be said to sustain plaintiff's contention, to the effect that the *cestui que trust* is not bound by a judgment against his trustee in an 'action affecting the trust property, where, as in the instant case, the interest of the *cestui que trust* is made known to the party instituting the action against the trust property.

[8] The judgment in the foreclosure action in controversy here bound only the parties thereto (*Wood* v. *Brady*, 68 Cal. 79 [5 Pac. 623, 8 Pac. 599]; *Wood* v. *Curran*, 99 Cal. 137, 140 [33 Pac. 774]; *Page* v. *W. W. Chase Co.*, 145 Cal. 578 [79 Pac. 278]; *Holt Mfg. Co.* v. *Collins*, 154 Cal. 265, 273 [97 Pac. 516]). The plaintiff's predecessor in interest, not being a party to the foreclosure action, was not bound by the judgment therein and the plaintiff, standing in the shoes of her predecessor in interest, likewise could not be bound by the said judgment.

Judgment affirmed.

Waste, J., Lawlor, J., Richards, J., Myers, C. J., Seawell, J., and Shenk J., concurred.