[No. D058284. Fourth Dist., Div. One. July 19, 2011.]

In re the Marriage of DELIA T. and ISAAC P. RAMIREZ.
DELIA T. RAMIREZ, Respondent, v.
ISAAC P. RAMIREZ, Respondent;
ROCHELLE A. RAND, APC, Appellant.

**COUNSEL**

Rochelle A. Rand for Appellant.

Delia T. Ramirez, in pro. per., for Respondent Delia T. Ramirez.

Janet Clare Miller for Respondent Isaac Ramirez.

OPINION

**McCONNELL, P. J.**—Rochelle A. Rand, APC (Rand), appeals a family court order that requires her to sign a document to relinquish a family law attorney's real property lien (FLARPL; Fam. Code, § 2033, subd. (a)),[1] which is recorded against her former client's community property interest in real property. Rand contends the order must be reversed because it is based on an earlier order to extinguish the FLARPL, which is void because she was not joined as an indispensible party to the proceeding or even given notice of it. We agree, and reverse the order under review to the extent it requires Rand to relinquish the FLARPL. We affirm the order to the extent it grants Rand's request for joinder in litigation pertaining to the FLARPL. As Rand requests, we remand the matter for a new proceeding on the FLARPL issue.

## FACTUAL AND PROCEDURAL BACKGROUND

In July 2005 Rand began representing Delia T. Ramirez (Delia) in a dissolution action against Isaac P. Ramirez (Isaac). In July 2006 Delia executed a declaration effecting a FLARPL to attach to community property located at 1678–1680 Donax Avenue in San Diego (Donax Avenue property) (§ 2033, subd. (a)), along with a deed of trust and assignment of rents against the property to secure $60,000 or more in attorney fees to Rand. On July 14, 2006, Delia served notice of the FLARPL on Isaac's attorney of record, Teresa Burris. Isaac had the statutory right to file an objection (§ 2033, subd. (c)), but he did not do so. On August 10, 2006, Delia recorded the deed of trust.

On August 29, 2006, Isaac executed a substitution of attorney replacing Burris with himself. On September 8, 2006, he executed a substitution of attorney replacing himself with Janet Clare Miller. Miller was aware of the FLARPL, as she discussed it in a November 13, 2006 pleading she filed with the trial court. Judge H. Ronald Domnitz initially handled the case. At a hearing on November 15, 2006, he referred to Rand's fees as "already protected."

A judgment of dissolution was entered on January 8, 2009, pursuant to a written settlement agreement (WSA). The WSA divides the couple's four community real properties between them. The WSA provides that the Donax Avenue property "shall be awarded to Husband, together with existing encumbrances, which [he] agrees to assume and pay. Husband shall indemnity [*sic*] and hold Wife harmless from liabilities associated with this property." The WSA also provides, however, that "each party shall bear his or

---

[1] Further statutory references are to the Family Code unless otherwise specified.

her own attorneys' fees and costs incurred in connection with this litigation," and "[b]ased on the . . . division of community assets and liabilities and the resolution of attorney fee issues resulting in no contribution of attorney fees from Husband to Wife, the parties agree that there is no equalization payment to either party." The WSA requires Delia to cooperate in refinancing the Donax Avenue property by removing her name from existing loans and title documents. The WSA does not mention the FLARPL.

On January 27, 2009, Miller filed a notice of withdrawal as Isaac's attorney of record. On January 30, 2009, Rand filed a notice of withdrawal as Delia's attorney of record.

On May 18, 2009, Isaac substituted Miller back into the case. The same date, Isaac, through Miller, brought an order to show cause (OSC) proceeding directed to Delia and Rand to force them to remove the FLARPL from the Donax Avenue property, and for sanctions. Even though Miller referred to the FLARPL in a pleading she filed with the court on November 13, 2006, Isaac's declaration stated he had no notice of the FLARPL and it was recorded on August 10, 2006, when he supposedly had no legal counsel. His declaration also complained that Rand did not mention the FLARPL during settlement negotiations that culminated in the WSA, and the FLARPL precluded him from refinancing the property.

Isaac, however, did not join Rand as a party to the OSC proceeding. On June 23, 2009, he filed a proof of service that stated he served Rand with a copy of the motion by mail on *October 2, 2007*, which was invalid on its face. Rand did not appear at the June 29, 2009 hearing. Delia appeared and claimed she executed the FLARPL because Rand told her the court required her to do so. Judge Domnitz vacated the FLARPL because of lack of notice to Isaac. The court remarked, "What happened here is an absolute travesty. There was a lien filed, never disclosed." The court assessed $3,500 in sanctions against Delia. The court declined to award sanctions against Rand because Isaac filed no memorandum of points and authorities. The court entered an order on September 3, 2009. Isaac did not serve a copy of the order on Rand.

At some point, Rand commenced a civil suit against Delia for the nonpayment of attorney fees. In January 2010 Delia responded to discovery requests, indicating that the family court had vacated the FLARPL. Rand investigated and for the first time learned about the court's September 3, 2009 order.

In March 2010 Rand filed a motion for joinder and for declaratory relief as to the validity of the court's September 3, 2009 order.[2] She argued the order was void because as a lienholder she was an indispensible party to the proceeding, but she was neither joined nor given notice of the proceeding. Rand submitted a supporting declaration.

The motion was delayed because Rand had difficulty serving Isaac. He was finally served in August 2010. He opposed Rand's motion, as did Delia.

A hearing was scheduled for September 15, 2010. Rand submitted another declaration, which stated she never received notice of the OSC proceeding in which the court vacated the FLARPL. Rand received an envelope from Miller, but it contained a pleading in an unrelated case in which Rand had no involvement. Rand left two phone messages at Miller's office about the mixup, but she received no response. Therefore, she believed "there was nothing at issue involving me or my firm." The declaration also pointed out that the purported proof of service on Rand stated she was served on October 2, 2007, which was an impossibility. Further, the declaration stated Miller had conceded to Rand that she did not serve a copy of the court's September 3, 2009 order on Rand. Rand sought to be joined as an indispensible party so she could seek a judicial declaration that the court's September 3, 2009 order is void and unenforceable.

On September 14, 2010, Rand appeared ex parte, before Judge David M. Rubin, the family court jurist who replaced Judge Domnitz on the case, to request a stay of the hearing on her motion for joinder based on newly discovered evidence that indicated Isaac and Delia lacked standing as to the FLARPL, and to give Rand the opportunity to obtain counsel. Miller agreed to the joinder of Rand as a party, but argued that after the joinder the court should order her to immediately sign a reconveyance of the deed of trust on the Donax Avenue property. Miller accused Rand of stall tactics. Rand denied stalling, explaining she had no notice of the earlier proceeding in which the FLARPL was vacated. She argued she had not had the opportunity to present evidence to support her position that Judge Domnitz's September 3, 2009 order is void. The court joined Rand as a party, but it denied a continuance.

At the September 15 hearing, Judge Rubin again granted Rand's request for joinder. He also gave Rand permission to file an amended pleading for a judicial declaration that the September 3, 2009 order was void for lack of joinder or notice. The amended pleading alleged Isaac was represented by Burris when Delia executed the FLARPL and the deed of trust was recorded, Rand served Burris with notice of the FLARPL, and Isaac's declaration that

---

[2] The motion erroneously gives the date of September 9, 2009, for the order.

he lacked notice was false. Further, the amended pleading alleged that Isaac's claim the FLARPL precluded him from refinancing the property was false because he had transferred the property to his daughter-in-law. The amended pleading also denied that Rand told Delia the court required Delia to grant Rand a FLARPL. Rand's paralegal submitted a declaration that disputed Delia's claim. The declaration stated the paralegal was present during several meetings with Delia about the FLARPL, and in each of the meetings Delia "was advised that signing the FLARPL was just one of her [payment] options, and that signing (or not signing) the lien papers was entirely her decision."

Rand again sought a continuance of the hearing to allow her to present evidence to refute Isaac's claims, which she could not present until she was a joined party. Judge Rubin denied her request, finding an evidentiary showing was immaterial because even if Judge Domnitz's September 3, 2009 order was void, Judge Rubin could not tamper with it. He stated, "I don't sit as a court of appeal over a colleague." In Judge Rubin's view, the issue of whether the order was void for lack of notice to Rand was an issue for *this* court in the first instance. Judge Rubin ordered Rand to complete and sign a "Substitution of Trustee and Full Reconveyance" by September 22, 2010, to extinguish her interest in the Donax Avenue property (September 15 order).

Rand did not comply, and on September 22, 2010, she filed a notice of appeal of the September 15 order. On October 25, 2010, Isaac successfully applied to the trial court for the appointment of an elisor to execute the document.

Rand then petitioned this court for a writ of supersedeas to stay the matter pending the appeal. We obtained responses from Isaac and Delia. We granted the petition pursuant to Code of Civil Procedure section 917.3, contingent on Rand's execution and delivery of the "Substitution of Trustee and Full Reconveyance" form to the office of the clerk of the superior court. She complied with the contingency.

## DISCUSSION[3]

### I

Section 1102 provides that, with certain exceptions, "either spouse has the management and control of the community real property, . . . but both

---

[3] No respondents' briefs have been filed. Thus, we decide the matter based on Rand's opening brief, the record, and any oral argument by Rand. (Cal. Rules of Court, rule 8.220(a)(2).)

spouses, either personally or by a duly authorized agent, must join in executing any instrument by which that community real property or any interest therein is . . . sold, conveyed, or encumbered." (§ 1102, subd. (a).) Under section 2033, however, either spouse may unilaterally encumber "his or her interest in community real property to pay reasonable attorney's fees in order to retain or maintain legal counsel in a proceeding for dissolution of marriage." (§ 2033, subd. (a).) The encumbrance is known as a FLARPL, and it "attaches only to the encumbering party's interest in the community real property." (§ 2033, subd. (a).)

■ Section 2033 sets forth notice requirements and the procedure for obtaining a FLARPL. To be valid, a notice of lien must be served personally or on the other party's attorney of record at least 15 days before recordation. The notice must include a description of the real property, the party's belief as to fair market value, the amount of the attorney fees and other information. (§ 2033, subd. (b).) Further, the statute sets forth the procedure for an objection by the unencumbering spouse. (§ 2033, subd. (c).) The family law court has jurisdiction to resolve any dispute arising from the existence of a FLARPL. (§ 2034, subd. (c).)[4]

■ "[F]ollowing the division of property, the community property awarded to one spouse no longer is liable for marital debts that are assigned to the other spouse, with the exception that the award of community real property to one spouse that is subject to a lien remains liable for satisfaction of [a] lien, i.e., the lien remains enforceable to satisfy the underlying debt. [Citation.] If the property division requires one person to pay a debt, and the creditor satisfies a money judgment for that debt from the property that was awarded to the person's spouse (e.g., through the enforcement of a lien), the person's spouse has a right of reimbursement from that person to the extent of the property applied." (*Lezine, supra*, 14 Cal.4th at p. 65 [discussing Civ. Code, former § 5120.160, continued in current Fam. Code, § 916].)[5] In *Lezine*, the court held that if a valid lien in favor of community property

---

[4] Former sections 4372 and 4373 of the Civil Code, which are continued in Family Code sections 2033 and 2034, were enacted in response to *Droeger v. Friedman, Sloan & Ross* (1991) 54 Cal.3d 26, 41 [283 Cal.Rptr. 584, 812 P.2d 931], in which the court explained that while it was "sympathetic to the problems economically weak spouses may have in obtaining legal representation" in dissolution actions, it lacked authority "to carve out an exception to the general rule against unilateral transfers of community realty." (See *Lezine v. Security Pacific Fin. Services, Inc.* (1996) 14 Cal.4th 56, 68, fn. 7 [58 Cal.Rptr.2d 76, 925 P.2d 1002] (*Lezine*).)

[5] Section 916, subdivision (a)(2) provides that after the division of community property "[t]he separate property owned by a married person at the time of the division and the property received by the person in the division is not liable for a debt incurred by the person's spouse before or during marriage, and the person is not personally liable for the debt, unless the debt was assigned for payment by the person in the division of the property. *Nothing in this paragraph affects the liability of property for the satisfaction of a lien on the property.*" (Italics added.) Section 916, subdivision (b) provides: "If property of a married person is applied to the

attached before the property was awarded to one spouse as separate property, the spouse received the property subject to the lien and the property remained liable for satisfaction of the lien, even though the underlying debt was assigned to the other spouse. (*Lezine, supra*, 14 Cal.4th at p. 65.)

## II

■ Rand contends she was an indispensable party to Isaac's motion for an order vacating the FLARPL, and thus joinder was required before her rights under the FLARPL could be adjudicated. We agree. "A person is an indispensable party to litigation ' "if his or her rights must necessarily be affected by the judgment." ' [Citation.] Stated differently, 'Where the plaintiff seeks some type of affirmative relief which, if granted, would injure or affect the interest of a third person not joined, that third person is an indispensable party.' [Citation.] These principles have been codified in Code of Civil Procedure section 389. An ' "indispensable party is not bound by a judgment in an action in which he was not joined." ' " (*Washington Mutual Bank v. Blechman* (2007) 157 Cal.App.4th 662, 667 [69 Cal.Rptr.3d 87], fn. omitted.)[6]

■ Additionally, California Rules of Court, rule 5.150, which applies to family law proceedings, provides: "Notwithstanding any other rule in this division, a person who claims or controls an interest subject to disposition in the proceeding may be joined as a party to the proceeding only as provided in this chapter. Except as otherwise provided in this chapter, all provisions of law relating to joinder of parties in civil actions generally apply to the joinder of a person as a party to the proceeding." "Both the Family Code and the California Rules of Court grant the family law court broad powers to determine and characterize community property and join third parties with an interest in such property." (*Glade v. Glade* (1995) 38 Cal.App.4th 1441, 1451 [45 Cal.Rptr.2d 695].)

satisfaction of a money judgment pursuant to subdivision (a) for a debt incurred by the person that is assigned for payment by the person's spouse, the person has a right of reimbursement from the person's spouse to the extent of the property applied, with interest at the legal rate, and may recover reasonable attorney's fees incurred in enforcing the right of reimbursement."

[6] Code of Civil Procedure section 389, subdivision (a) provides: "A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action *shall be joined* as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties or (2) *he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest* or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party." (Italics added.)

■ It is established that a lienholder is an indispensable party to a foreclosure action, and his or her rights are not affected absent joinder. In *Castle v. Schulman* (1948) 32 Cal.2d 222, 225 [195 P.2d 781], the court explained the "elementary rule" that "the judgment in a prior foreclosure action did not extinguish the rights of a lienholder who was not made a party to the action." (See also *Wilson v. Beville* (1957) 47 Cal.2d 852, 855 [306 P.2d 789] [in condemnation proceeding the failure to join lienholder "left his lien unimpaired"].) By analogy, the same rule should apply to a FLARPL proceeding, because without joinder the lienholder cannot protect his or her interests.

■ At the September 15, 2010 hearing, the court should have found the September 3, 2009 order vacating the FLARPL was void because Rand was not joined as an indispensible party, or even notified of the proceeding, and thus she could not be compelled to give up her interest in the FLARPL. As a result of the court's procedure, Rand was deprived of the opportunity to rebut the arguments Isaac made to obtain the vacatur of the FLARPL.

■ Judge Rubin's belief he lacked authority to rectify Judge Domnitz's order was mistaken. An order rendered without an indispensable party is void as to that party. (*Estate of Reed* (1968) 259 Cal.App.2d 14, 22 [66 Cal.Rptr. 193]; *Fraser-Yamor Agency, Inc. v. County of Del Norte* (1977) 68 Cal.App.3d 201, 214 [137 Cal.Rptr. 118] ["If [indispensable] persons are not before the court, the court is without jurisdiction to adjudicate their rights because the failure to join an indispensable party constitutes a jurisdictional defect."].) "Because the requirement that indispensable parties be before the court is mandatory, it may be raised at any time and it may be raised by the appellate court on its own motion if the parties fail to make the objection." (*Fraser-Yamor Agency, Inc. v. County of Del Norte*, at p. 214; see *Bank of California v. Superior Court* (1940) 16 Cal.2d 516, 522 [106 P.2d 879]; *Estate of Reed*, at p. 22.)

## DISPOSITION

The September 15, 2010 order is reversed to the extent it requires Rand to complete and execute a document to vacate the FLARPL, and on remand the court is directed to hold further proceedings on the FLARPL issue. The order is affirmed insofar as it grants Rand's request for joinder.[7] The December 6, 2010 order conditioning a stay pending appeal on Rand executing the "Substitution of Trustee and Full Reconveyance" and depositing it in the

---

[7] Rand also seeks the reversal of the court's October 25, 2010 order for the appointment of an elisor, but she did not appeal that order. Given our holding, however, an elisor is improper at this time.

office of the clerk of the superior court is vacated, and the "Substitution of Trustee and Full Reconveyance" is ordered returned to Rand. Rand is awarded costs on appeal.

McIntyre, J., and Aaron, J., concurred.

On August 22, 2011, the opinion was modified to read as printed above.